IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2013 Term

Nos. 12-0994 and 12-1014

**FILED**

**May 17, 2013**

**released at 3:00 p.m.**
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

IN RE: DARRIEN B. AND ANDREW B.

Appeal from the Circuit Court of Raleigh County
Honorable John A. Hutchison
Civil Action Nos. 10-JA-125-H and 10-JA-126-H

VACATED AND REMANDED WITH DIRECTIONS

Submitted: April 10, 2013
Filed: May 17, 2013

Michael P. Cooke, Esq.
Bluefield, West Virginia
Attorney for Petitioner George B.

Stephen P. New, Esq.
Beckley, West Virginia
Attorney for Petitioner Hannah W.

Patrick Morrissey, Esq.
Attorney General
Angela Alexander Walters, Esq.
Assistant Attorney General
Charleston, West Virginia
Attorney for Respondent Department
of Health and Human Resources

Colleen M. Brown-Bailey, Esq.
Beckley, West Virginia
Guardian *Ad Litem* for Darrien B.
and Andrew B.

The opinion of the Court was delivered PER CURIAM.

**SYLLABUS BY THE COURT**

1.   "'Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.' Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996)."  Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

2.   "Although parents have substantial rights that must be protected, the primary goal in cases involving abuse and neglect, as in all family law matters, must be the health and welfare of the children." Syl. Pt. 3, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996).

i

3. "'Where it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children adjudicated to be abused or neglected has been substantially disregarded or frustrated, the resulting order of disposition will be vacated and the case remanded for compliance with that process and entry of an appropriate dispositional order.' Syl. Pt. 5, *In re Edward B.*, 210 W.Va. 621, 558 S.E.2d 620 (2001)." Syl. Pt. 5, *In re T.W.*, __ W.Va. __, 737 S.E.2d 69 (2012).

Per Curiam:

This case is before this Court on the consolidated appeals of the petitioners,

Hannah W. and George B.,[1] from the Circuit Court of Raleigh County's July 31, 2012, order

terminating their parental rights[2] to their twin boys, Darrien B. and Andrew B. Based upon

the record, the parties' briefs, and the arguments presented, the order of the circuit court is

vacated and this case is remanded to the circuit court for further proceedings consistent with

this opinion.


## I. Factual and Procedural Background

On November 2, 2010, Hannah W. ("the mother") took her twenty-three-

month-old son Darrien B.[3] to the emergency room at Raleigh General Hospital where she

reported that Darrien had been running in the living room of her home when he tripped and

fell over a pair of shoes. The mother further reported that the child cried inconsolably after

he fell and would not put any weight on his right leg. Darrien was diagnosed with a spiral

fracture of his right femur. Because spiral fractures in children are suspicious for abuse, the

hospital contacted Child Protective Services ("CPS") of the respondent, the West Virginia

---

[1]We follow our traditional practice in child abuse and neglect matters, as well as other cases involving sensitive facts, by abbreviating the last names of the parties. *See*, *e.g.*, *In re Jessica G.*, 226 W.Va. 17, 697 S.E.2d 53 (2010).

[2]Each petitioner has filed a separate appeal from the same underlying order of termination, and this Court has consolidated the appeals for consideration and opinion.

[3]Darrien B. and Andrew B. were born on November 18, 2008.

1

Department of Health and Human Resources ("the Department"). Hospital records reflect that the emergency room physician informed CPS worker Donna Dickens that a spiral fracture "is very difficult to have with a simple fall from [a] standing position, but he could not make a statement being 100% sure that that is not how the injury occurred." Darrien was transferred to the Charleston Area Medical Center ("CAMC"). The records from CAMC's Emergency Department indicate that "[a]lthough this is very suspicious fracture, we cannot rule in or out the probability of abuse. At this point, we would leave this decision up to Child Protective Services to make and have them be involved with this case."

On the date of Darrien's injury, CPS worker Dickens went to the parents' home to secure custody of Darrien's brother, Andrew B. Ms. Dickens observed that the home was "disheveled" with trash throughout the living room and kitchen. She noted that the kitchen counters were covered with dirty dishes, some with food still left on them, and that there was a "horrible stench" in the apartment. At this same time, George B. ("the father") informed Ms. Dickens that he had voluntarily relinquished his parental rights to a biological daughter from a different relationship because the child wanted to live with her maternal grandparents. Ms. Dickens's subsequent investigation revealed that the father relinquished his parental

2

rights to his daughter only after CPS instituted an abuse and neglect proceeding arising out of substantiated allegations that the father had sexually abused the child.[4]

On November 4, 2010, the Department filed a verified Petition to Institute Child Abuse and Neglect Proceedings against both parents in the Circuit Court of Raleigh County. The Department alleged that both Darrien and Andrew were abused and/or neglected as defined in West Virginia Code § 49-1-3 *et seq*. (2009 & Supp. 2012) and § 49-6-1 *et seq*. (2009 & Supp. 2012); that "the circumstances in the home where the children live places them in imminent danger[;]" and that "there are no reasonable and effective alternatives to removing the children from the home." The Department also alleged that the father had voluntarily relinquished his parental rights to his daughter, as discussed above.[5] The circuit court entered an order that same day ordering that the petition be filed, transferring custody of the children to the Department, appointing legal counsel for each

---

[4]The record does not indicate whether criminal charges were ever filed against the father in this regard. The record does reflect that this child was adopted and the case was closed by CPS.

[5]Although the Department mentioned the father's prior voluntary relinquishment in its petition, it did not seek a termination of the father's parental rights to Darrien and Andrew on that basis.

3

parent, and appointing a guardian *ad litem*[6] to represent the children.  The parents waived

their preliminary hearing and the case proceeded to adjudication.[7]

An adjudicatory hearing[8] was held before the circuit court during which the

emergency room physicians from both hospitals testified to their suspicions of abuse in

relation to the spiral fracture suffered by Darrien.  However, neither physician could testify

to precisely how this particular injury occurred.  The parents' medical expert testified and

expressed his opinion that there was a "very, very low chance that there was a child abuse

type of injury to the right femur fracture."  The parents, CPS worker Dickens, an emergency

room nurse from Raleigh General Hospital, and a social services specialist from CAMC also

testified at this hearing.

---

[6]Stacey Fragile, Esq., was appointed as the guardian *ad litem* and appeared for all of the hearings until the last hearing held before the circuit court on June 28, 2012, during which Colleen Brown-Bailey, Esq., appeared as the children's guardian *ad litem*.

[7]In an order entered December 21, 2010, the circuit court directed that both parents undergo a psychological evaluation.  The evaluating psychologist issued his reports in which he recommended individual and family counseling; parenting, life skills, and anger management classes; substance abuse counseling and monitoring, including random drug screens; and a monitoring period.  The psychologist did not recommend the independent return of the children to the parents or unsupervised visitation with them at that time.

[8]The adjudicatory hearing began on February 2, 2011.  It resumed and concluded on February 22, 2011.

4

On March 16, 2011, the circuit court entered an order based on the evidence presented at the adjudicatory hearing and found, in part, as follows:

> 2. The . . . parents in their testimony have failed to provide a consistent and reasonable explanation of how the injury occurred. There is clear evidence that . . . the parents have given divergent and contradictory descriptions of the events leading to the injury of their child.
>
> 3. There is clear and convincing evidence that the home where the children have resided is maintained in an unsatisfactory and unhealthy manner.
>
> 4. The [Department] has proven by clear and convincing evidence that the injury to the child in this case arose from conditions existing in the home that were directly responsible for the abuse and neglect.
>
> 5. There is no evidence that the injury to the child was the result of intentional conduct of the . . . parents, but the injury was the result of abuse and neglect as defined by West Virginia Code § 49-1-3 et. seq., and § 49-6-1 et. seq.
>
> 6. The infant child, Darrien [B.], is abused and neglected pursuant to West Virginia Code § 49-1-3 et. seq., and § 49-6-1 et. seq., and therefore the infant child Andrew [B.] is also in danger.
>
> 7. The infant children, Darrien [B.] and Andrew [B.], were abused and neglected based on the condition of the home pursuant to West Virginia Code § 49-1-3 et. seq., and § 49-6-1 et. seq.

On June 14, 2011, the circuit court entered an order granting both parents a six-month post-adjudicatory improvement period. Thereafter, the circuit court held review

5

hearings to assess how the parents were doing in their improvement period. In the circuit court's order entered on November 23, 2011, following one of those review hearings, the court stated that the parents were "having problems keeping their home in a safe and sanitary condition for the children and the home now has roaches due to the unsanitary condition . . . ." In this same order, the circuit court granted the parents an extension of their improvement periods with the added requirement that both parents submit to random drug and alcohol screens.

The circuit court was updated on the status of the parents in a Revised Court Summary dated January 27, 2012, filed in the circuit court. In this Summary, CPS worker Traci Hairston reported that the random drug screens for both parents had been negative and that the Department had made frequent and random visits to the home finding it to be "somewhat clean" at times and "filthy and filled with clutter" at other times.[9] Ms. Hairston further reported in her Summary that although the parents had made progress, they had shown that "they are not capable of providing a stable home environment for their children[;]" that the Department had "made every effort to provide [them] with all possible assistance[;]" and that the parents have been "granted two extensions to their Improvement

_____

[9]This Revised Court Summary also reflects that in-home services provider Kim Jesse informed Ms. Hairston that the parents were about to be evicted from their apartment because their gas had been shut off, which was a breach of their lease, and that the parents could be evicted for their rental delinquency, as well.

6

Period and have continually failed to change all the safety issues in the home."[10]  Ms. Hairston concluded by stating that the Department recommends that "the court move to Disposition and the termination" of the parental rights of both parents.

On February 2, 2012, a review hearing was held before the circuit court during which it was reported that while the parents had made some progress, they had not successfully completed their case plans. At that time, both parents moved for a dispositional improvement period.  Soon thereafter, CPS worker Hairston filed a Court Summary in the circuit court dated February 7, 2012.  In this Summary, Ms. Hairston reported that the parents had continued to test negative on their drug screens, that the visits between the parents and the children were going well, and that the home had been kept "relatively clean."  She further reported, however, that the Department had received a letter from the apartment manager who advised that the parents are constantly behind in their rent; that they have a roach infestation in their apartment; and that they have been noncompliant with their lease.  Ms. Hairston concluded that although "the Department was prepared to reunify Andrew and Darrien with their parents it has now become difficult due to the housing issues . . . ."

---

[10]Ms. Hairston also reported in this Summary that when she visited the home in early December 2011, the mother advised that she did not know how she and the father would support themselves when the children came home because they could not afford to take care of themselves; that the father spent an entire paycheck on a trip to Tennessee; and that they recently purchased a gaming system.  This Summary also reflects that Ms. Hairston told the mother that she and the father would not be reunified with the children if they did not keep the home clean and "start making better decisions."

Thereafter, the case moved forward and, on March 9, 2012, the disposition hearing was held before the circuit court. During this hearing, the in-home services provider, Kelli Cook, testified[11] to her belief that the parents had successfully completed their improvement period. She also testified that the gas service had been restored to the apartment; that the home had been clean since January 2012; that both parents had been employed for the last four or five months; and that the roach infestation had been resolved. Ms. Cook further testified that the prior month, the Department had begun weekly overnight in-home visits between the children and the parents and that those visits were going well. Ms. Cook testified that while she would not recommend returning the children to the home immediately, she would say that a transition period of three months for reunification of the children with the parents "if everything stayed clean and all the utilities caught up . . . ."

Following the disposition hearing, the circuit court entered an order on March 23, 2012, directing the Department to continue to provide services and to continue with the visitation between the parents and the children until the court issued its decision on disposition. The circuit court also scheduled "[a]n Improvement Period Review or Motion to Terminate and Court's Decision" hearing for June 28, 2012. On June 27, 2012, the day prior to this hearing, CPS worker Hairston filed a Court Summary in which she reported that

---

[11]It appears from the record that Kelli Cook replaced Kim Jesse as the in-home services provider around September 2011.

> [t]he Department has grave concerns that the behaviors in the home have not significantly changed as throughout the lifetime of this case George and Hannah have minimally complied in the aspect of they have not missed parenting or adult life skill sessions, but they have not learned how to maintain appropriate housing or safety for the children.

• • •

> At this time the Department has reservations about the children being reunified with their parents do [sic] to the consistency of unchanged behaviors throughout this case.[12]

Ms. Hairston concluded her Summary with the Department's final recommendation that the children remain in the legal and physical custody of the Department. Significantly, the Department did not recommend the termination of parental rights in this Summary.

On the following day, June 28, 2012, the previously scheduled hearing was held before the circuit court during which the Department's counsel represented that the Department was seeking the termination of the parental rights of both parents. The guardian *ad litem* expressed her agreement with the Department's position. At the conclusion of this hearing, the circuit court stated:

> This is one of the cases that . . . keeps me up at night. It's very, very clear that the law of the State of West Virginia is . . . that a parent has the constitutional right to raise their own children. Having said that, this Court . . . has found that the children have been abused.

---

[12]Ms. Hairston also reported that following the March 9, 2012, disposition hearing, the parents had a bed bug infestation in the home, which had since been resolved.

Now . . . with the Department directly providing services or contracting and having those services provided otherwise, the question is . . . have the parents assimilated the training that they received and have they, in fact, gotten rid of or resolved the issues which created the conditions of abuse and/or neglect as they existed at the time of the filing of the petition. And I have great concerns regarding whether or not these parents have, in fact, fully assimilated . . . the training and recognized the issues that they have . . . in terms of raising these two children.

• • •

The acts and the conduct that created the problem here relate to the injury of Darrien . . . The nature of the broken bone raised all kinds of red flags with the Department and with the doctors at the hospital.

• • •

And, further . . . George [B.] has had prior involvement with Child Protective Services. . . . He relinquished his rights to [another] child . . . after allegations of sexual abuse were substantiated in a preliminary investigation . . . .

• • •

The Court finds that, based upon its involvement in this case, that . . . the parents have failed to adequately improve the conditions that resulted in the abuse and neglect, that they have been unable to or unwilling to adequately change the conditions which resulted in the abuse and neglect despite the fact that the Court has, with the assistance of the Department, attempted to provide additional training, treatment and programs which would have eliminated that.

The Court finds that the history in this case has been that the . . . parents have done the minimum to . . . try to keep the case going and that there's no real evidence that . . . they have - either of them - assimilated the training and accepted the

10

training and made . . . the changes necessary to alleviate the conditions.

Therefore, it's the judgement [sic] of the Court that the parental rights of both George [B.] and Hannah [W.] are terminated as to Darrien [B.] and Andrew [B.].

At that point during the hearing, the mother's counsel advised the circuit court, as follows:

In discussions prior to this hearing . . . with Ms. Hairston, it was not her intention to recommend termination of parental rights to this Court. That isn't what her court summary says.[13] The Court didn't follow the recommendation of the Department.

Moreover, we have the home services worker [Kelli Cook] here today, Your Honor. If - - and perhaps I didn't understand where the Court was in the posture, but if I need to call Kell[i], who is here today, or Ms. Hairston, I want to put their recommendations to this Court on the record. I believe that my client has a right to that.

(Footnote added). The circuit court refused to permit either Ms. Hairston or Ms. Cook to testify stating, "[T]his is a review hearing and a ruling hearing. It was not set up for an evidentiary hearing, so we don't have time."

On July 31, 2012, the circuit court entered an order memorializing its ruling made during the June 28, 2012, hearing and terminating the parents' parental rights to Darrien B. and Andrew B. on the basis that the parents had "failed to change the conditions

---

[13]Counsel is referring to Ms. Hairston's Court Summary filed with the circuit court the previous day.

which gave rise to this case and failed to assimilate the therapy and training offered by the Department to successfully complete their improvement periods . . . [.]" The circuit court ordered that the visitation between the children and the parents be maintained and that services by the Department continue pending the parents' appeal to this Court.

## II. Standard of Review

We are asked to review a circuit court's order entered upon a petition for termination of parental rights. Our standard of review in this regard is well established:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

12

### III. Discussion

In the present appeal, the mother asserts that the circuit court erred during the June 28, 2012, hearing by refusing to allow her counsel to call CPS worker Traci Hairston and in-home services provider Kelli Cook to the witness stand. The mother asserts that both Hairston and Cook were present and were prepared to testify that the children should be reunified with their parents.

We begin our analysis of this issue with our basic tenet that "[a]lthough parents have substantial rights that must be protected, the primary goal in cases involving abuse and neglect, as in all family law matters, must be the health and welfare of the children." Syl. Pt. 3, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996). The record reflects that even with the extensions to the post-adjudicatory improvement period granted to each parent, as well as the services provided by the Department, the parents could not consistently maintain their apartment in a clean and sanitary manner for the children, keep current on their rent and utilities, and maintain steady employment.

Notwithstanding the parents' inability to fulfill the terms of their improvement period, the termination of parental rights remains the most "drastic remedy" that can be imposed in a case of abuse and neglect. *See* Syl. Pt. 5, in part, *In re Nelson B.*, 225 W.Va. 680, 695 S.E.2d 910 (2010) ("'Termination of parental rights, the most drastic remedy under

13

the statutory provision covering the disposition of neglected children . . . [.]'  Syl. pt. 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).").  Consequently,

> "[w]here it appears from the record that the process established by the rules of Procedure of Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children adjudicated to be abused or neglected has been substantially disregarded or *frustrated*, the resulting order of disposition will be vacated and the case remanded for compliance with that process and entry of an appropriate dispositional order."  Syl. Pt. 5, *In re Edward B.*, 210 W.Va. 621, 558 S.E.2d 620 (2001).

Syl. Pt. 5, *In re T.W.*,  __ W.Va. __, 737 S.E.2d 69 (2012) (Emphasis added).

Rule 36(a) of the Rules of Procedure for Child Abuse and Neglect provides, as follows:

> *Findings of fact and conclusions of law; time frame.* — At the conclusion of the disposition hearing, the court shall make findings of fact and conclusions of law, in writing or on the record, as to the appropriate disposition in accordance with the provision of W.Va. Code § 49-6-5.  The court shall enter a disposition order, *including findings of fact and conclusions of law, within ten (10) days of the conclusion of the hearing*.

(Emphasis added).  Here, the disposition hearing was held on March 9, 2012.  On March 23, 2012, the circuit court entered an Order Following Disposition Hearing on Both Parents that simply continued the case on status quo.  The circuit court did not set forth findings of fact and conclusions of law in this order.  *See Id.*  Instead, the circuit court scheduled a hearing

14

for June 28, 2012, for "Improvement Period Review or Motion to Terminate and Court's Decision."

During the June 28 hearing, the mother's counsel advised the circuit court that he had spoken with CPS worker Hairston, who allegedly advised him that the Department would *not* be seeking a termination of parental rights that day. Counsel's representation was arguably consistent with Ms. Hairston's Court Summary filed with the circuit court the prior day in which the Department did *not* seek a termination of parental rights. Accordingly, the circuit court should have permitted the mother's counsel to call Ms. Hairston to the witness stand for the limited purpose of exploring the Department's position with regard to termination. Indeed, given the length of time that had passed since the disposition hearing (almost four months), it was particularly important to have taken the testimony of the in-home services provider who had presumably continued to provide services to the parents per the circuit court's March 23, 2012, order.

Under the facts and circumstances herein, this Court concludes that the disposition in this case was frustrated when the circuit court refused to allow counsel to call Ms. Hairston and Ms. Cook to the witness stand during the June 28, 2012, hearing. Accordingly, we remand this case for the purpose of holding an evidentiary hearing to allow the parents' counsel to call Ms. Hairston and Ms. Cook as witnesses to explore the

Department's position with respect to the termination of the parental rights to Darrien and Andrew.[14]

Another matter to be addressed on remand is the father's prior voluntary relinquishment of parental rights to his biological daughter, as discussed above. "The revocation of a parent's parental rights, whether by *voluntary relinquishment* or by involuntary termination, *is a very serious matter*." *In re Cesar L.*, 221 W.Va. 249, 257, 654 S.E.2d 373, 381 (2007) (emphasis added); *see also In re James G.*, 211 W.Va. 339, 346, 566 S.E.2d 226, 233 (2002) ("Nothing prevents the Department from conducting an investigation if it believes that a parent who has *voluntarily terminated* parental rights with respect to one child might be mistreating another child . . . ." (Emphasis added).). Further, West Virginia § 49-6-5(a)(7) provides, in relevant part, that "[f]or purposes of the court's consideration of the disposition custody of a child . . . the department is *not* required to make reasonable efforts to preserve the family if the court determines: (A) The parent has subjected . . .

_____

[14]We note that the circuit court's July 31, 2012, order terminating the parents' parental rights does not cover the requisite statutory factors under West Virginia Code § 49-6-5(a)(6), although the findings it made during the June 28, 2012, were arguably sufficient. *See In re Jamie Nicole H.*, 205 W.Va. 176, 517 S.E.2d 41 (1999) (upholding termination of parental rights where transcript of dispositional hearing, rather than order of termination, satisfied Court that lower court had made findings required by West Virginia Code § 49–6–5(a)(6)). Nonetheless, on remand, the order entered by the circuit court should comply with this statute.

16

another child of the parent . . . to aggravated circumstances which include . . . *sexual abuse*[.]" *Id.* (Emphasis added). Moreover, as this Court has stated on many occasions,

> [t]he guiding principle in any child abuse or neglect proceeding is to do what is best for the child: "First and foremost in a contest involving the custody of a child is the consideration of that child's welfare. It has been held repeatedly by this Court that the welfare of the child is the polar star by which the discretion of the court will be guided."

*In re: Kyiah P.*, 213 W.Va. 424, 429, 582 S.E.2d 871, 876 (2003) (internal citations omitted).

Here, while the Department's petition to institute these proceedings alleged, in part, that the father had voluntarily relinquished his parental rights to a biological daughter after allegations of sexual abuse were substantiated, and while the circuit court acknowledged this prior relinquishment on the record at the conclusion of the June 28, 2012, hearing,[15] we conclude that these prior substantiated allegations of sexual abuse must be more fully explored and addressed on remand. This would include, but is not necessarily limited to, whether there was an adjudication in this earlier child abuse proceeding against the father and whether these substantiated allegations of sexual abuse constitute a separate

---

[15]The circuit court stated that the father "has had prior involvement with Child Protective Services" and had "relinquished his rights to [another] child . . . after allegations of sexual abuse were substantiated in a preliminary investigation[.]"

17

and/or additional basis for the termination of the father's parental rights to Darrien B. and Andrew B.

Accordingly, this Court vacates the circuit court's July 31, 2012, order and remands this case to the circuit court for a full evidentiary hearing to explore the Department's position concerning the termination of the petitioners' parental rights to Darrien B. and Andrew B. and to further address the substantiated allegations of sexual abuse involving the father and his biological daughter to whom he voluntarily relinquished his parental rights.[16]

## IV. Conclusion

Based upon this Court's thorough review of this matter and for the foregoing reasons, the order of the Circuit Court of Raleigh County terminating the parental rights of the parents with regard to Darrien B. and Andrew B. is hereby vacated and this case is remanded to the circuit court for an expedited evidentiary hearing consistent with this

---

[16]We find that the other assignments of error asserted by the parents in the case *sub judice*, including, but not limited to, the father's argument that the circuit court erred in denying him a dispositional improvement period and in failing to place adequate weight on the recommendations of the Department and the in-home services provider, need not be addressed as they have either been rendered moot by this Court's opinion herein and/or will necessarily be considered anew by the circuit court on remand. *See Cole v. Fairchild*, 198 W.Va.736, 752 n. 22, 482 S.E.2d 913, 929 n. 22 (1996) ("The parties raise a number of other alleged errors in their briefs . . . We carefully have reviewed each alleged error and find they . . . are rendered moot by our above decision . . . .").

opinion.  To facilitate the commencement of the proceedings on remand, the Clerk is directed

to issue the mandate of the Court contemporaneously with the issuance of this opinion.

Vacated and Remanded with Directions.