**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**

**June 8, 2023**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **H.B.**

**No. 22-0345** (Wood County 20-JA-65)

**MEMORANDUM DECISION**

When the Circuit Court of Wood County held the disposition hearing in this child abuse and neglect civil proceeding, counsel for Petitioner Father R.B.[1] stated that Petitioner consented to the recommendations of the Department of Health and Human Resources and the guardian ad litem for the child that his parental rights to his daughter H.B. be terminated. The court accepted Petitioner's consent to the termination and entered its disposition order on April 4, 2022. Petitioner now appeals that order and argues that the court erred by failing to follow the mandatory procedures set forth in the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings governing uncontested dispositions. We agree that the proceedings before the circuit court were inadequate because the court never questioned Petitioner directly about his understanding of the consequences of termination. So, we vacate the order and remand this case for a disposition hearing. This case satisfies the "limited circumstances" requirement of Rule 21(d) of the Rules of Appellate Procedure for disposition in a memorandum decision.[2]

**I. Factual and Procedural History**

Because this appeal turns on the adequacy of the disposition hearing, we summarize the facts leading up to that day. In April 2020, the DHHR filed a petition alleging that Petitioner engaged in domestic violence in the presence of his nine-year-old child and exposed her to drug abuse. Petitioner stipulated to the allegations against him. The court accepted the stipulation, adjudicated Petitioner as abusive and neglectful, and granted him a post-adjudicatory improvement period.

At first, Petitioner did not do well in his improvement period. He tested positive for marijuana on several drug screens in the fall of 2020. And because Petitioner was on probation

---

[1] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

[2] Petitioner appears by counsel Eric K. Powell. The DHHR appears by counsel Attorney General Patrick Morrisey and Assistant Attorney General Lee Niezgoda. Debra L. Steed appears as the child's guardian ad litem.

related to a drug offense, his probation was revoked, and he was incarcerated in October 2020. After learning about the incarceration, the court terminated his post-adjudicatory improvement period in December 2020.

Petitioner was released from jail in January 2021. He started participating with services offered by the DHHR and was in regular contact with his case workers. In March 2021, Petitioner moved to reinstate his post-adjudicatory improvement period based on his enrollment in an intensive outpatient substance abuse treatment program. The court denied that motion but granted him a post-dispositional improvement period.

The parties agree that Petitioner substantially complied with the terms of his post-dispositional improvement period. He regularly passed drug screens, obtained employment, and participated with parenting education and domestic violence prevention services. Even so, Petitioner never visited the child during these proceedings. She was afraid of Petitioner and did not want to see him. At a hearing in May 2021, the court noted that Petitioner seemed to be doing well, but denied his motion for visitation with the child, pending the results of his parental fitness evaluation.[3]

In July 2021, the DHHR filed a report noting that Petitioner was complying with his improvement period but stated that Petitioner's "intention may not necessarily be reunification but to have visits/contacts" with the child. And during other review hearings, the DHHR represented that Petitioner was doing everything that was asked of him, but the child still did not want to visit with him. The DHHR noted that the child was angry and disappointed that Petitioner claimed not to recall an incident where he supposedly chased her with a baseball bat through their house.

At the disposition hearing in March 2022, the DHHR and the child's guardian ad litem recommended that the circuit court terminate Petitioner's parental rights and leave post-termination visitation at the discretion of the child and her guardian. By this time, the child was ten years old and had not visited with Petitioner for two years. Petitioner's counsel stated that Petitioner consented to this disposition, but the court did not address Petitioner directly. Specifically, Petitioner's counsel said:

> I agree with [counsel for the DHHR], this is a sad case. [Petitioner's] done all he can to try to reunite himself with his daughter and she's rebuffing his efforts to be reunified. [Petitioner] still loves [the child]. I think there is a bond there, it's just unilateral, it's not bilateral. There's a strong unilateral bond. Maybe that will grow into a bilateral bond and that would blossom into a visitation or two.
>
> [Petitioner's] come to grips with the termination of the case and his parental rights. At least he'll – we'd welcome a visit or some form of contact with [the child] at this juncture, but that may be determined on down the road.
>
> And for those reasons, your Honor, I think that [Petitioner] wishes to adopt

---

[3] The DHHR raised concerns about Petitioner's intellectual ability and its impact on whether he could gain insight and practice what he learned through services.

2

the recommendation of the Department and move on and let [the child] become [the child] at her own pace.

The circuit court thanked Petitioner for putting the best interests of the child above his own wishes. It noted that Petitioner did everything asked of him to improve, but concluded that despite extensive services, reunification was not in the child's best interest.

In its disposition order terminating Petitioner's parental rights, the circuit court stated that Petitioner "consents to the termination of his parental rights to the minor child, with post-termination visitation left open in the discretion of the minor child and her guardian, and believes it is in the minor child's best interest." It found that the DHHR made reasonable efforts to reunify the family by providing services to Petitioner but despite his compliance with his improvement period, the bond between Petitioner and the "child could not be repaired."[4]

## II. Standard of Review

On appeal from a final order in a child abuse and neglect civil proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo.[5]

## III. Analysis

In his sole assignment of error, Petitioner argues that the circuit court erred by not complying with the mandatory procedures governing uncontested dispositions. The DHHR and the child's guardian ad litem acknowledge that the court failed to follow those procedures. Even so, they ask that we affirm the disposition order; they contend that Petitioner received extensive services while the child has been in foster care for two years and still there is no evidence that it would be in the child's best interest to reunify with Petitioner.[6]

A judicial proceeding terminating parental rights implicates a parent's fundamental constitutional rights.[7] The State and the parent share an interest in ensuring that the decision to

---

[4] The child's mother's parental rights were also terminated. The permanency plan for the child is adoption in the current placement.

[5] Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

[6] The DHHR argues that the circuit court made sufficient findings to support involuntary termination of Petitioner's rights. But we decline to affirm for that reason because the record, taken as a whole, reflects that the circuit court treated this case as an uncontested disposition.

[7] *See* Syl. Pt. 1, *In re Willis*, 157 W. Va. 225, 207 S.E.2d 129 (1973) ("In the law concerning custody of minor children, no rule is more firmly established than that the right of a natural parent to the custody of his or her infant child is paramount to that of any other person; it is a fundamental personal liberty protected and guaranteed by the Due Process Clauses of the West Virginia and

(Continued . . .)

3

terminate parental status is accurate and just.[8]  In view of these concerns, the Rules of Procedure for Child Abuse and Neglect Proceedings set forth procedures that a circuit court must follow during a disposition hearing when a parent does not contest termination of his parental rights.  The court must conduct a full inquiry and ask the parent several questions including whether he fully understands the consequences of that disposition.  Rule 35 states, in relevant part:

> (a) *Uncontested termination of parental rights.* — If a parent voluntarily relinquishes parental rights or fails to contest termination of parental rights, the court shall make the following inquiry at the disposition hearing:
>
> (1) If the parent is present at the hearing but fails to contest termination of parental rights, the court shall determine whether the parent fully understands the consequences of a termination of parental rights, is aware of possible less drastic alternatives than termination, and was informed of the right to a hearing and to representation by counsel.

We recognize that "[f]ew decisions can be more momentous than the choice to give up one's parental rights."[9]  So, compliance with Rule 35 is essential at a disposition hearing, and it is incumbent on judges to ensure that a parent is fully aware of the ramifications of his actions and is aware of less drastic alternatives than termination.

In this case, the circuit court did not comply with the requirements set forth in Rule 35 because it did not ask Petitioner any questions.  And this failure constitutes reversible error because we are unable to ascertain whether Petitioner fully understood the consequences of his consent to the termination of his parental rights.

This Court has held that when the Rules of Procedure for Child Abuse and Neglect Proceedings have been substantially disregarded, the case should be remanded for compliance with those procedures:

> Where it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children adjudicated to be abused or neglected has been substantially disregarded or frustrated, the resulting order of disposition will be vacated and the case remanded for compliance with that process and entry of an

---

United States Constitutions."); *see also Santosky v. Kramer*, 455 U.S. 745, 753-54 (1982) (the parent-child relationship is a fundamental liberty interest in which the state cannot interfere without providing the parent fundamentally fair procedures).

[8] *In re S.C.*, 245 W. Va. 677, 688, 865 S.E.2d 79, 90 (2021).

[9] *In re Ibanez*, 834 N.W.2d 306, 315 (S.D. 2013).

appropriate dispositional order.[10]

For this reason, we vacate the circuit court's order and remand this case for a disposition hearing.

## IV. Conclusion

The April 4, 2022, order is vacated, and this case is remanded to the circuit court to hold a disposition hearing.

Vacated and remanded
with directions.

**ISSUED:** June 8, 2023

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn

**DISSENTING:**

Justice Tim Armstead

Armstead, Justice, dissenting:

In this case, the circuit court terminated Petitioner's parental rights after finding that there was no reasonable likelihood that the conditions of neglect and abuse could be substantially corrected in the near future. Because I believe that there was clear and convincing evidence to support the circuit court's decision, and the circuit court's order does not indicate that it relied on the Petitioner's stipulation in reaching its conclusions, I respectfully dissent.

H.B. lived in a home with parents who had substance abuse issues and who engaged in domestic violence in her presence. At an adjudicatory hearing held on September 2, 2020, Petitioner stipulated that he and H.B.'s mother engaged in domestic violence in the presence of H.B. Further, he stipulated that his substance abuse inhibited his ability to provide proper care for H.B. Petitioner was granted a six-month post-adjudicatory improvement period. However, as the majority notes, he did not do well in that improvement period, and it was eventually terminated after he was incarcerated.

---

[10] Syl. Pt. 5, *In re T.W.*, 230 W. Va. 172, 737 S.E.2d 69 (2012) (citing Syl. Pt. 5, *In re Edward B.*, 210 W. Va. 621, 558 S.E.2d 620 (2001)).

Thereafter, the circuit court granted Petitioner a post-dispositional improvement period, and it is undisputed that he complied with that improvement period. However, despite his compliance with his post-dispositional improvement period, H.B. remained unwilling to participate in visits with Petitioner and continually expressed her desire to continue living with her foster family and to "move on with her life." Petitioner's final dispositional hearing was held on March 25, 2022, and at that time, DHHR, the Guardian ad Litem, and CASA moved to terminate his parental rights to H.B. while leaving post-termination visitation open in the discretion of H.B. and her guardian.

During the hearing, counsel for Petitioner stated, in part:

> [Petitioner's] done all he can to try to reunite himself with his daughter and she's rebuffing his efforts to be reunified. [Petitioner] still loves [H.B.]. I think there is a bond there, it's just unilateral, it's not bilateral. There's a strong unilateral bond. Maybe that will grow into a bilateral bond and that would blossom into a visitation or two.

By order entered on April 4, 2022, the circuit court terminated Petitioner's parental rights and left post-termination visitation between H.B. and Petitioner "at the discretion of the minor child, and her guardian, and after consultation of the child's therapist []." Now, Petitioner asks this Court to reverse the termination of his parental rights because he alleges that the circuit court failed to follow Rules 33 and 35 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings when it "accepted [his] uncontested termination of parental rights." Because I do not believe that the circuit court's order indicates that it terminated Petitioner's parental rights based on the fact that Petitioner agreed to that disposition at the March 25, 2022 hearing, I believe that Petitioner's reliance upon Rules 33 and 35 is misplaced.

It is a long-standing principle that a court speaks through its orders. Although the circuit court noted in the order being appealed that Petitioner "consent[ed] to the termination of his parental rights to the minor child," it does not appear that the circuit court relied upon this consent in deciding to terminate Petitioner's parental rights. The reference to Petitioner's consent is found in a portion of the order in which the circuit court outlined the procedural history of the case and described the positions being taken by Petitioner, the DHHR, the GAL, and CASA. There is no mention of Petitioner's consent to termination of his parental rights in the findings of fact or conclusions of law portion of the order. Instead, the circuit court found and concluded that: (1) continuation in the home of the Petitioner was contrary to the welfare of H.B.; (2) the DHHR made reasonable efforts to reunify the family; and (3) despite Petitioner's compliance with the post-dispositional improvement period, the bond between the Petitioner and the minor child could not be repaired. The court proceeded to state:

> ***For the foregoing reasons***, the Court further finds that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected in the near future. The child needs continuity in care and caretakers, and a significant amount of time is required to be integrated into a stable and permanent home environment. (emphasis added).

6

These findings are sufficient to support the involuntary termination of Petitioner's parental rights.  Moreover, had the circuit court merely relied on the Petitioner's consent to termination, the specific findings made by the court would have been unnecessary. For these reasons, I believe the circuit court properly terminated Petitioner's parental rights.  Accordingly, I respectfully dissent as to the majority's decision to vacate and remand this case.