737 S.E.2d 69

### In re T.W., C.W., S.W., and J.W.

### No. 11–1628.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 25, 2012.

Decided Nov. 14, 2012.

**11.** *See id.*

176

Steven A. Greenbaum, Law Office of Steven A. Greenbaum, Martinsburg, WV, for the Petitioner.

Lee Niezgoda, Assistant Attorney General, Fairmont, WV, for the Respondent, DHHR.

Michael D. Thompson, Thompson & Pardo, Charles Town, WV, Guardian Ad Litem.

McHUGH, Justice:

This is an appeal by Stephanie D.[1] (hereinafter "Petitioner") from an order of the Cir-

---

1. In cases of a sensitive nature, this Court is careful to protect the identity of the parties.

cuit Court of Berkeley County accepting the voluntary relinquishment of parental rights by John W. (hereinafter "John W." or "father") to his two eldest children and dismissing his two youngest children from the case. Upon thorough review of the briefs, arguments, applicable precedent, and the record, this Court reverses the lower court's order and remands this matter for further proceedings consistent with this opinion.

## I. Factual and Procedural History

This matter involves abuse and neglect allegations affecting the four children of John W. His eldest two children, T.W. and C.W. were born on March 8, 1995, and March 25, 1996, respectively. The mother of these two children, Wendy P., has not had substantial contact with T.W. or C.W., has relinquished her parental rights to these children, and is not a party to this action. John W.'s two youngest children, S.W. and J.W., were born on April 4, 1997, and April 10, 2006, respectively. The mother of these two children is Petitioner Stephanie D., and these two children have resided with her in the State of Maryland since the divorce of John W. and Stephanie D. and the award of primary custody to Stephanie D. on March 3, 2010. Visitation was granted to the father, John W., every other weekend.

On June 12, 2010, a boyfriend of one of the older daughters allegedly raped S.W. while she was visiting her father in West Virginia.[2] That was the final visit between the father and the younger two children residing in Maryland. On June 22, 2010, Stephanie D. obtained a ninety-day temporary order suspending visitation between John W. and S.W. and J.W., based upon that allegation of sexual misconduct by the older daughter's boyfriend. That temporary order had expired by the time the underlying abuse and neglect proceedings were initiated.

On October 25, 2010, the West Virginia Department of Health and Human Resources (hereinafter "DHHR") received a referral indicating that the father, John W., had abandoned his two older children, T.W. and C.W., in West Virginia and that the living conditions in their home were deplorable. The DHHR investigated the allegations and filed an October 29, 2010, Abuse and Neglect Petition alleging that the father had abandoned the two older children. The DHHR cited deplorable home conditions, including the lack of running water; sanitation issues involving toilets and soiled clothing; lack of supervision for the children; physical abuse; and sexual misconduct.[3] Notably, although the petition named *all four* children, it did not include the allegations of rape of S.W. by her older sister's boyfriend while S.W. was visiting the father's home in West Virginia. On December 10, 2010, the DHHR filed an amended petition based upon T.W.'s malnourishment; a bruise on the hip of T.W., allegedly caused by physical violence; and sexual abuse of C.W. Even in the amended petition, there was no reference to the rape which allegedly occurred while S.W. was visiting in West Virginia.

On December 21, 2010, the Maryland court handling the divorce between John W. and Stephanie D. stayed further proceedings pending the outcome of the abuse and neglect proceedings in the Circuit Court of Berkeley County, West Virginia. On June 28, 2011, a hearing on the abuse and neglect proceedings was held in the Circuit Court of Berkeley County. At that hearing, counsel for John W. indicated that John W. wished to relinquish his parental rights to T.W. and C.W., but John W. maintained that he had not abused or neglected any of his children. Counsel for John W. further indicated that John W. did not want findings to be made on the abuse and neglect petition and apparently made his relinquishment of parental rights

---

"We follow our past practice in juvenile and domestic relations cases which involve sensitive facts and do not utilize the last names of the parties." *State ex rel. West Virginia Dept. of Human Servs. v. Cheryl M.*, 177 W.Va. 688, 689 n. 1, 356 S.E.2d 181, 182 n. 1 (1987) (citations omitted).

2. According to the DHHR brief, there was a juvenile petition filed against that perpetrator, and a rape kit confirmed the allegations of S.W.

3. One daughter had disclosed that her father had exposed his naked body to her, watched pornography in her presence, and forced her to participate in his sexual acts.

contingent upon the absence of further proceedings against him on the abuse and neglect petition. The DHHR moved to dismiss the case concerning S.W. and J.W., the two children residing in Maryland, and the lower court dismissed those two children from the case. Further, the lower court refused to consider an in camera hearing to consult with the older two children regarding the allegations of abuse and neglect and also accepted John W.'s voluntary relinquishment of parental rights for T.W. and C.W. without further inquiry.

Subsequent to the lower court's ruling, Stephanie D., as the non-offending parent, appealed that ruling to this Court. In her assignments of error on appeal, Petitioner contends that the lower court erred in (1) accepting John W.'s voluntary relinquishment of parental rights to T.W. and C.W. without conducting an evidentiary hearing to make factual findings on the allegations of abuse and neglect and to consider the best interests of S.W. and J.W.; (2) failing to appoint a separate guardian ad litem for S.W. and J.W., the two younger children residing in Maryland, as requested by the guardian ad litem who had been appointed for *all four* children; (3) failing to conduct an *in camera* hearing on the issue of potential testimony by the older children, T.W. and C.W., regarding allegations of abuse; and (4) dismissing the matter with regard to the children residing in Maryland, S.W. and J.W.

## II. Standard of Review

■ This Court has consistently utilized a compound standard of review in matters of this nature. In *In re Emily,* 208 W.Va. 325, 540 S.E.2d 542 (2000), this Court stated that abuse and neglect proceedings will be evaluated under a "compound standard of review: conclusions of law are subject to a *de novo* review, while findings of fact are weighed against a clearly erroneous standard." 208 W.Va. at 332, 540 S.E.2d at 549. The following standard of review, also applicable to this case, is enunciated in syllabus point one of *In the Interest of Tiffany Marie S.,* 196 W.Va. 223, 470 S.E.2d 177 (1996):

> Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and

neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.

■ This Court also remains mindful of the primary objective in cases of allegations of abuse and neglect. As this Court stated in syllabus point three of *In re Katie S.,* 198 W.Va. 79, 479 S.E.2d 589 (1996), "[a]lthough parents have substantial rights that must be protected, the primary goal in cases involving abuse and neglect, as in all family law matters, must be the health and welfare of the children." Observing these standards of review, this Court addresses the arguments of the parties in this case.

## III. Discussion

### A. Circuit Court Hearing

■ In determining the appropriate resolution of any abuse and neglect proceeding, "the best interests of the child is the polar star by which decisions must be made which affect children." *Michael K.T. v. Tina L.T.,* 182 W.Va. 399, 405, 387 S.E.2d 866, 872 (1989) (citation omitted). West Virginia Code § 49–6–1 (2005) (Supp.2009) governs the filing and of an abuse and neglect proceeding and guides a circuit court in its consideration of such matters. That statute permits a petition to be filed when a child is believed to be abused and/or neglected and enumerates a circuit court's obligations in dealing with such a petition, providing as follows:

(a) If the department or a reputable person believes that a child is neglected or abused, the department or the person may present a petition setting forth the facts to the circuit court in the county in which the child resides, or if the petition is being brought by the department, in the county in which the custodial respondent or other named party abuser resides, or in which the abuse or neglect occurred, or to the judge of the court in vacation. Under no circumstance may a party file a petition in more than one county based on the same set of facts. The petition shall be verified by the oath of some credible person having knowledge of the facts. The petition shall allege specific conduct including time and place, how such conduct comes within the statutory definition of neglect or abuse with references thereto, any supportive services provided by the department to remedy the alleged circumstances and the relief sought. Upon filing of the petition, the court shall set a time and place for a hearing and shall appoint counsel for the child. When there is an order for temporary custody pursuant to section three [§ 49–6–3] of this article, the hearing shall be held within thirty days of the order, unless a continuance for a reasonable time is granted to a date certain, for good cause shown.

 Following the mandates of the statutory scheme for the management of abuse and neglect cases, this Court has observed that "[i]n a child abuse and neglect [case], before a court can begin to make any of the dispositional alternatives under W.Va.Code, 49–6–5, it must hold a hearing under W.Va. Code, 49–6–2, and determine 'whether such child is abused or neglected.' Such a finding is a *prerequisite* to further continuation of the case." Syl. Pt. 1, *State v. T.C.*, 172 W.Va. 47, 303 S.E.2d 685 (1983) (emphasis supplied).[4] In syllabus point two of *T.C.*, this Court held as follows:

W.Va.Code, 49–6–1 *et seq.*, does not foreclose the ability of the parties, properly counseled, in a child abuse or neglect proceeding, to make some voluntary dispositional plan. However, such arrangements are not without restrictions. First, the plan is subject to the approval of the court. Second, and of greater importance, the parties cannot circumvent the threshold question which is the issue of abuse or neglect.

Furthermore, in syllabus point five of *In re Edward B.*, 210 W.Va. 621, 558 S.E.2d 620 (2001), this Court explained the essential requirement that a reviewing court adhere to the mandates of the statutory scheme, stating as follows:

Where it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children adjudicated to be abused or neglected has been substantially disregarded or frustrated, the resulting order of disposition will be vacated and the case remanded for compliance with that process and entry of an appropriate dispositional order.

This Court has also specifically stated that "[d]ismissal of the petition without a hearing is a direct violation of the statutory mandate to hold a hearing on abuse and/or neglect petitions." *In re Emily G.*, 224 W.Va. 390, 396, 686 S.E.2d 41, 47 (2009).

 With regard to John W.'s offer of voluntary relinquishment of parental rights in the present case, this Court has stated that a circuit court has discretionary authority in an abuse and neglect proceeding to accept a voluntary relinquishment of parental rights and to terminate parental rights based upon such relinquishment. *In re James G.*, 211 W.Va. 339, 566 S.E.2d 226 (2002); *see also In re Kristopher E.*, 212 W.Va. 393, 572 S.E.2d 916 (2002). However, an independent review of all relevant factors must be undertaken prior to such determination, as this Court explained in syllabus point four of *James G.*,

A circuit court has discretion in an abuse and neglect proceeding to accept a proffered voluntary termination of parental

---

4. West Virginia Code § 49–6–2 generally governs the procedures for the adjudicatory phase of an abuse and neglect case, and West Virginia Code § 49–6–5 generally governs the procedures for the dispositional phase of an abuse and neglect case.

rights, or to reject it and proceed to a decision on involuntary termination. Such discretion must be *exercised after an independent review of all relevant factors,* and the court is not obliged to adopt any position advocated by the Department of Health and Human Resources.

211 W.Va. at 341, 566 S.E.2d at 228 (emphasis supplied). This Court also addressed an issue regarding the effect of an offer of voluntary relinquishment of parental rights in an abandonment abuse and neglect case in *State ex rel. DHHR v. Hill,* 207 W.Va. 358, 532 S.E.2d 358 (2000). This Court observed the requirement for a dispositional hearing and held as follows in syllabus point three:

In a child abuse and neglect proceeding where abandonment of the child by either or both biological parents is alleged and proven, the circuit court should decide in the dispositional phase of the proceeding whether to terminate any or all parental rights to the child. Before making that decision, *even where there are written relinquishments of parental rights,* the circuit court is required to conduct a disposition hearing, pursuant to West Virginia Code § 49-6-5 (1999) and Rules 33 and 35 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings, at which the issue of such termination is specifically and thoroughly addressed.

207 W.Va. at 359, 532 S.E.2d at 359 (emphasis supplied).[5] Similarly, where the parties have stipulated to all facts necessary for a termination of parental rights, this Court has still held that a court cannot dispense with the dispositional hearing. In syllabus point two of *In re Beth Ann B.,* 204 W.Va. 424, 513 S.E.2d 472 (1998), this Court stated as follows:

In a child abuse and/or neglect proceeding, even where the parties have stipulated to the predicate facts necessary for a termination of parental rights, a circuit court must hold a disposition hearing, in which the specific inquiries enumerated in Rules 33 and 35 of the *Rules of Procedure for Child Abuse and Neglect Proceedings* are made, prior to terminating an individual's parental rights.

In the case sub judice, grievous allegations of abuse and neglect were raised, and the potential still exists for future visitation between John W. and the two children to whom his parental rights were not terminated. The granting of a consensual termination of parental rights without investigation into those allegations or findings with regard to the best interests of *all four* of these children is inconsistent with both the mandate of the statutes articulating the protocol for abuse and neglect cases and the prior cases decided by this Court.

Based upon the requirement of West Virginia Code § 49-6-1(a) that a circuit court presented with an abuse and neglect petition must hold a hearing thereon and further based upon the specific circumstances of this

---

5. The Rules of Procedure for Child Abuse and Neglect Proceedings place certain requirements on actions involving voluntary terminations. Rules 33 and 35 address the voluntariness of consent to such terminations and whether they are in the best interests of the child or children. Rule 33(b) provides as follows:

(b) *Voluntariness of consent.*—Before determining whether or not to accept a stipulation of disposition, the court shall determine that the parties and persons entitled to notice and the opportunity to be heard, understand the contents of the stipulation and its consequences, and that the parties voluntarily consent to its terms. The court must ultimately decide whether the stipulation of disposition meets the purposes of these rules, controlling statutes and is in the best interests of the child. The court shall hear any objection to the stipulation of disposition made by any party or persons entitled to notice and the opportunity

to be heard. The stipulations shall be specifically incorporated in their entirety into the court's order reflecting disposition of the case. Rule 35(a) addresses uncontested termination of parental rights and provides, in pertinent part, as follows:

If a parent voluntarily relinquishes parental rights or fails to contest termination of parental rights, the court shall make the following inquiry at the disposition hearing:

. . . .

(3) If the parent(s) is/are present in court and voluntarily has/have signed a relinquishment of parental rights, the court shall determine whether the parent(s) fully understand(s) the consequences of a termination of parental rights, is/are aware of possible less drastic alternatives than termination, and was/were informed of the right to a hearing and to representation by counsel.

case, as reviewed above, this Court finds that the lower court abused its discretion by accepting the father's voluntary relinquishment of parental rights to two of his children and dismissing two other children without holding a full evidentiary hearing to address the specific allegations of abuse and neglect. In an abuse and neglect case, the offer of a voluntary relinquishment of parental rights does not obviate the statutory requirements regarding the necessity for proceeding with the adjudicatory and dispositional phases of the abuse and neglect case. Prior to accepting an offer of voluntary termination of parental rights, a reviewing court must conduct the hearings required by West Virginia Code §§ 49–6–2 and 49–6–5. The evidence of abuse and neglect in the present case was not evaluated in any meaningful fashion during the hearing, no evidence was taken, and the best interests of all four children, including the two children who were dismissed and residing with their mother in Maryland, were not addressed. This Court therefore vacates the lower court's order and remands this case to the circuit court for a full evidentiary hearing on all issues raised in the petition.

■■■■■ Furthermore, documentation was apparently presented to the DHHR during the pendency of this proceeding indicating that S.W. had been the victim of rape or sexual misconduct by her sister's boyfriend while S.W. was visiting her father in West Virginia, as referenced above. The DHHR should have included these allegations in an amended petition even though the facts underlying such allegations may not have been completely known when the original petition was filed. As this Court stated in syllabus point five of *In re Randy H.*, 220 W.Va. 122, 640 S.E.2d 185 (2006):

> To facilitate the prompt, fair and thorough resolution of abuse and neglect actions, if, in the course of a child abuse and/or neglect proceeding, a circuit court discerns from the evidence or allegations presented that reasonable cause exists to believe that additional abuse or neglect has occurred or is imminent which is not encompassed by the allegations contained in the Department of Health and Human Resource's petition, then pursuant to Rule 19

of the *Rules of Procedure for Child Abuse and Neglect Proceedings* [1997] the circuit court has the inherent authority to compel the Department to amend its petition to encompass the evidence or allegations.

Based upon the foregoing, the DHHR is directed, upon remand, to include allegations in the amended petition regarding the alleged rape and/or sexual misconduct suffered by S.W. while she was visiting her father in West Virginia.

B. Appointment of Guardian ad Litem

■■■■■ With regard to the appointment of a guardian ad litem for the four children involved in this case, this Court notes that the guardian ad litem originally appointed for all four children failed to conduct any meaningful investigation regarding the two children residing with their mother in Maryland. This Court has imposed strict requirements regarding guardians ad litem and has explained their duties as follows:

> " 'Each child in an abuse and neglect case is entitled to effective representation of counsel. To further that goal, *W.Va. Code* [§ ] 49–6–2(a) [1992] mandates that a child has a right to be represented by counsel in every stage of abuse and neglect proceedings. Furthermore, Rule XIII of the *West Virginia Rules for Trial Courts of Record* provides that a guardian *ad litem* shall make a full and independent investigation of the facts involved in the proceeding, and shall make his or her recommendations known to the court. Rules 1.1 and 1.3 of the *West Virginia Rules of Professional Conduct,* respectively, require an attorney to provide competent representation to a client, and to act with reasonable diligence and promptness in representing a client.' Syllabus Point 5, in part, *In re Jeffrey R.L.*, 190 W.Va. 24, 435 S.E.2d 162 (1993)." Syl. Pt. 4, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995).

Syl. Pt. 4, *In re Elizabeth A.*, 217 W.Va. 197, 617 S.E.2d 547 (2005).

■■■■■ In the present case, the guardian ad litem attempted to exercise his duties with respect to the two children residing with their father in West Virginia and ultimately

requested the lower court to appoint a separate guardian ad litem for the children residing in Maryland. This Court finds that the lower court abused its discretion in failing to grant the motion for the appointment of a separate guardian ad litem for John W.'s children residing in Maryland. Upon remand, the lower court is directed to appoint a separate guardian ad litem for the children residing in Maryland and to permit adequate time for that guardian ad litem to prepare for a full evidentiary hearing regarding the best interests of these children.

### C. In Camera Hearing

■ West Virginia Code § 49–6–5(a)(6)(C) (2011) provides that a court "shall give consideration to the wishes of a child fourteen years of age or older or otherwise of an age of discretion as determined by the court regarding the permanent termination of parental rights." This Court has addressed that statutory requirement and has acknowledged that the wishes of such a child must be considered prior to a determination on the termination of parental rights.[6] In *In re Jessica G.*, 226 W.Va. 17, 697 S.E.2d 53 (2010), the thirteen-year-old child did not want her father's parental rights terminated. This Court found as follows:

> After reviewing the circuit court's order terminating the Appellant's parental and custodial rights, as well as a review of the transcript of the dispositional hearing, we find that the circuit court failed to adequately explain why Jessica G.'s, who was thirteen years old at the time of the dispositional hearing (and is now fourteen years old), was not "otherwise of an age of discretion," *Id.*, and why her wishes were not factored into whether termination of the Appellant's parental rights, and the concomitant bond between Jessica G. and her father, might be contrary to Jessica G.'s best interest and emotional well-being.

*Jessica G.*, 226 W.Va. at 22, 697 S.E.2d at 58; *see also In re Ashton M.*, 228 W.Va. 584, 723 S.E.2d 409 (2012).

■ In the present case, the two oldest children were aged fourteen or older, and counsel for Petitioner had allegedly advised the lower court that those two older children had indicated their desire to inform the court about the specific conduct of their father. The lower court, relying upon the arguments of the DHHR and the guardian ad litem regarding the contention that the children might suffer emotional harm by testifying, determined that an *in camera* hearing was not necessary. Thus, the lower court refused to conduct an *in camera* hearing with these children, considered only the representations of counsel, and took no further action to ascertain the specific wishes of the children.

Based upon the requirement of West Virginia Code § 49–6–5(a)(6)(C) and the expression of the desire of these children to speak with the trial court, this Court finds that the trial court should have provided a meaningful opportunity for these children to express their concerns with regard to the conditions of abuse and neglect allegedly existing within their home, as well as their wishes regarding the termination of their father's parental rights. On remand, the trial court is directed to determine the most appropriate manner in which these two children may make their wishes known to the court.

### D. Dismissal of John W.'s Younger Two Children Residing in Maryland

Petitioner contends that the lower court erred by dismissing the younger two children, S.W. and J.W., from this abuse and neglect action. She argues that the trial court was presented with a DHHR petition regarding the alleged abuse and neglect of *all four* children and should have addressed the issues raised with regard to all four of

---

**6.** As this Court explained in *Edward B.*,

> As this most important area of the law has expanded, this Court has insisted that the directives of applicable rules and legislative enactments must be carefully identified, respected, and incorporated within our court system. The Rules of Procedure for Child Abuse and Neglect Proceedings and the related statutes detailing fair, prompt, and thorough procedures for child abuse and neglect cases are not mere general guidance; rather, they are stated in mandatory terms and vest carefully described and circumscribed discretion in our courts, intended to protect the due process rights of the parents as well as the rights of the innocent children.

210 W.Va. at 632, 558 S.E.2d at 631.

those children. She further contends that the lower court erred in assuming that the Maryland divorce court would address issues relating to these younger two children. No referral had been made to Maryland Child Protective Services personnel, and Maryland had already stayed its divorce proceedings awaiting a West Virginia decision on the abuse and neglect matter.

Upon review by this Court, we find that the lower court abused its discretion by dismissing the two children residing in Maryland and, as explained above, in failing to hold a hearing regarding the abuse and neglect issues involving those children. Those two children, although residing primarily with their mother in Maryland, had exercised visitation with their father in West Virginia and had also allegedly been the victims of the conditions of abuse or neglect referenced in the DHHR petition. The lower court did not have the benefit of a guardian ad litem report regarding these children, heard no testimony regarding these children, and ultimately dismissed these children from this abuse and neglect case without testimonial evidence regarding the alleged abuse and neglect they suffered or a finding regarding their best interests. This ruling was a clear abuse of discretion.

### IV. Conclusion

Based upon this Court's thorough review of this matter and for the foregoing reasons, the order of the Circuit Court of Berkeley County accepting John W.'s voluntary relinquishment of parental rights and dismissing the abuse and neglect petition with regard to S.W. and J.W. is hereby vacated. Furthermore, this case is remanded to the Circuit Court of Berkeley County for the appointment of a guardian ad litem for S.W. and J.W. and for an additional evidentiary hearing consistent with this opinion.

Vacated and Remanded with Directions.