THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2019 Term

_____

Nos. 18-1082, 18-1084

_____

**FILED**

**October 18, 2019**

**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

IN RE: J.A., A.A., Z.A., S.A., AND J.A.

_____

Appeal from the Circuit Court of Mingo County
Honorable Miki Thompson, Judge
Juvenile Action No. 18-JA-5-6-7-8-9

AFFIRMED IN PART, VACATED IN PART, AND REMANDED
_____

Submitted:  September 10, 2019
Filed:  October 18, 2019

Marsha Webb-Rumora, Esq.
Williamson, West Virginia
Attorney for Petitioner H.A.

Susan J. Van Zant, Esq.
Williamson, West Virginia
Attorney for Petitioner V.A.

Diana Carter Wiedel, Esq.
Williamson, West Virginia
Guardian ad litem

Patrick Morrisey, Esq.
Attorney General
Thomas T. Lampman, Esq.
Assistant Solicitor General
Brandolyn N. Felton-Ernest, Esq.
Assistant Attorney General
Charleston, West Virginia
Attorneys for Respondent Department
   of Health and Human Resources

JUSTICE HUTCHISON delivered the Opinion of the Court.

**SYLLABUS BY THE COURT**

1. "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety. Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996)." Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

2. "Although parents have substantial rights that must be protected, the primary goal in cases involving abuse and neglect, as in all family law matters, must be the health and welfare of the children." Syl. Pt. 3, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996).

3. "In cases involving the abuse and neglect of children, when it appears from this Court's review of the record on appeal that the health and welfare of a child may be at risk as a result of the child's custodial placement, regardless of whether that placement

i

is an issue raised in the appeal, this Court will take such action as it deems appropriate and necessary to protect that child." Syl. Pt. 6, *In re Timber M.*, 231 W.Va. 44, 743 S.E.2d 352 (2013).

4. When determining whether to permanently terminate the parental, custodial and guardianship rights and responsibilities of an abusing parent, West Virginia Code § 49-4-604(b)(6)(C) (2019) requires a circuit court to give consideration to the wishes of a child who is fourteen years of age or older or otherwise of an age of discretion as determined by the court. A circuit court is not obligated to comply with the child's wishes, but shall make the termination decision based upon a consideration of the child's best interests. The child's preference is just one factor for the circuit court's consideration.

5. "'Where it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children adjudicated to be abused or neglected has been substantially disregarded or frustrated, the resulting order of disposition will be vacated and the case remanded for compliance with that process and entry of an appropriate dispositional order.' Syl. Pt. 5, *In re Edward B.*, 210 W.Va. 621, 558 S.E.2d 620 (2001)." Syl. Pt. 5, *In re T.W.*, 230 W.Va. 172, 737 S.E.3d 69 (2012).

**HUTCHISON, Justice:**

The petitioners herein, Father H.A. and Mother V.A. (collectively "the parents"), appeal[1] the November 1, 2018, order of the Circuit Court of Mingo County that terminated their parental rights to three of their children, Z.A., S.A., and J.A.-2, on the basis of physical and educational neglect.[2] The petitioners contend that the evidence does not support termination. Upon a review of the parties' arguments and the record on appeal, we find no error in the circuit court's termination of parental rights to these three children and, accordingly, affirm the circuit court's order with regard to Z.A., S.A., and J.A.-2.

However, upon a review of the record and the receipt of supplemental briefing, we find plain error in the circuit court's disposition of the abuse and neglect case with regard to two of the parents' other children, J.A.-1 and A.A. The circuit court made a verbal ruling to leave intact the parents' rights to teenagers J.A.-1 and A.A., but did so without having performed any analysis of these children's best interests. It appears that the circuit court also failed to enter any dispositional order for J.A.-1 and A.A. Although J.A.-

---

[1] The parents filed separate appeals that this Court consolidated for purposes of argument and decision. Father H.A. is the petitioner in docket number 18-1082, while Mother V.A. is the petitioner in 18-1084.

[2] Because this case involves minors and sensitive matters, we follow our long-standing practice of using initials to refer to the children and the parties. *See e.g.*, W.Va. R. App. P. 40(e); *State v. Edward Charles L.*, 183 W.Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990). Two of the children who were the subject of the underlying abuse and neglect case share the same initials, so we refer to the older child as J.A.-1 and the younger child as J.A.-2.

1 reached the age of majority during the appeal period and is no longer a subject of the abuse and neglect case, A.A. is still a minor. Therefore, we vacate the circuit court's verbal ruling regarding the parents' rights to A.A. and remand this case for further proceedings consistent with this opinion.

## I. Facts and Procedural Background

The petitioners in this consolidated appeal are the parents of eight children, five of whom were minors living in the family's home on February 9, 2018 when the Department of Health and Human Resources ("DHHR") filed an abuse and neglect petition in circuit court. Children J.A.-1 and A.A. are teenagers, while Z.A., S.A., and J.A.-2 are younger. The DHHR alleged that the parents committed both physical and educational neglect of these five children. Specifically, the abuse and neglect petition asserted that the family's home was dirty, with pet waste on the floors and a urine smell throughout, and there was garbage all over the yard. The DHHR reported that during the then-current school year, J.A.-1 had not attended school at all; A.A. had seventy unexcused absences from school; Z.A. had twenty unexcused absences from school; S.A. had thirteen unexcused absences from school; and J.A.-2 had been absent from school a total of twenty-one days with eleven days being unexcused. The DHHR submitted school records to the court documenting the absences. Although he was seventeen years old, J.A.-1 had completed only a few high school freshman credits. The DHHR explained that it had worked with the family since June 2017 in an attempt to correct the truancy, without success. Before the February 2018 abuse and neglect petition was filed, the parents withdrew J.A.-1 and,

2

subsequently, A.A. from public high school with the stated intention of having them home schooled. However, the DHHR found no evidence that any home school lessons were completed. Moreover, pursuant to state statute, the parents are not qualified to provide a home school education because they both lack high school or graduate equivalency diplomas.[3] The abuse and neglect petition asserted that Mother V.A. told the school system that the children's maternal grandmother would teach the home school lessons, but there is no evidence that the maternal grandmother did so and, furthermore, there was a registered sex offender residing in the maternal grandmother's home. There was also no computer or internet access available for J.A.-1 and A.A. to pursue a home school curriculum.

The abuse and neglect petition was filed on a non-emergency basis and the children were permitted to remain in the home. A guardian ad litem ("GAL") was appointed for the children, and each parent filed an answer denying the allegations. A preliminary hearing was held on February 28, 2018, where all parties were given the opportunity to present evidence.

During the preliminary hearing, a DHHR Child Protective Services ("CPS") worker testified about the truancy and the soiled condition of both the children and the home. She testified that although the home had been cleaned "for the most part" in the days since the February 2018 petition was filed, and the home was "better than it was," more

---

[3] *See* W.Va. Code § 18-8-1(c)(2)(B) (2016).

cleaning was still needed.  This witness also testified about some of the DHHR's prior involvement with the family, including a petition for abuse and neglect that was filed in 2010 for the same types of issues.[4] The CPS worker testified about services the DHHR had provided to the family in the months leading up to the filing of the current abuse and neglect petition, including paying a utility bill and providing a visiting worker through the "Safe at Home" program. The CPS worker explained that despite receiving these services, the problems had persisted. J.A.-1 and A.A. were not completing any home school lessons, and the maternal grandmother was not physically able to teach the lessons, yet the parents were considering removing the younger three children from school for home schooling. In response, during the preliminary hearing the Mother presented testimony from the "Safe at Home" worker that the parents had been compliant with the services provided, J.A.-1 and A.A. did not want to go to school, and the "Safe at Home" worker was trying to find alternative educational services for J.A.-1 and A.A.

At the conclusion of the preliminary hearing, the circuit court found probable cause to proceed with the abuse and neglect petition. The circuit court awarded temporary legal custody of the five minor children to the DHHR, but left the children in the physical care of the parents. The circuit court gave strict warnings to the parents that all five of the children must be enrolled in school and if they missed or were tardy for even one day

---

[4] After receiving services during the 2010 abuse and neglect case, the parents successfully regained custody of their children in 2011.

4

without an excuse, then the DHHR would remove the children from the parents' home for placement in foster care.

One month later, on March 28, 2018, the GAL filed a motion asking the circuit court to order the immediate removal of the children from the parents' home. The GAL reported that J.A.-1 and A.A. had been re-enrolled in school, but both were suspended on March 13, 2018 for skipping classes. The GAL learned that some of the other children also missed school in March. Furthermore, when a CPS worker took the children for haircuts, several were found to have untreated lice. During a home visit, the GAL observed that although the home was no longer messy, it still had a foul odor; there was dirt and grime throughout the home; and there was trash all over the yard. The GAL spoke with school personnel who reported that there had been concerns for years about the children's welfare. The children were sent to school in dirty clothes and frequently smelled so bad that people complained. The GAL also reported that in addition to the abuse and neglect petition that was filed in 2010, this family had been involved with, and had received intermittent services from, the DHHR over a period of approximately *twenty years*. By written order entered on April 9, 2018, the circuit court granted the GAL's motion and removed the five children from the home. J.A.-1 was placed in a children's shelter, while the other four children were placed with their paternal grandmother. At a hearing held two days later, the circuit court heard a verbal report from the GAL and reaffirmed the removal of the children from the home. Thereafter, the parents were given additional DHHR services including parenting classes, as well as supervised visitation.

The circuit court held the adjudicatory hearing on April 11, 2018. None of the parties called any witnesses but, upon the DHHR's motion and without objection, the circuit court took notice of all prior testimony and documents submitted in this case. Upon considering the evidence, the circuit court adjudicated both parents as abusive and/or neglectful. Each parent made a motion for a post-adjudicatory improvement period, arguing that they had cleaned their home and had done everything asked of them. The DHHR opposed the motions, asserting that the parents had been receiving services for many years but there was never any lasting improvement. The circuit court agreed with the DHHR's argument and denied the motions.

The dispositional hearing was held on August 15, 2018. Without objection, the court began by taking notice of all prior evidence offered in the case. The DHHR offered testimony from a CPS supervisor who, in addition to testifying about the current truancy and cleanliness issues, explained the DHHR's long involvement with this family. A CPS case was opened as early as 1998 because children in the home had poor hygiene, their dental health was neglected, and the home was dirty and in poor condition. According to this CPS supervisor, the family received services from 1998 until 2005, and then again from 2007 to 2010, when the DHHR found it necessary to file the previous abuse and neglect petition in 2010. The witness testified that through the years, there have been ongoing "truancy referrals, problems with the younger kid's [sic] teeth, issues with hygiene, the house, [and] electricity" and the parents have been unable to take care of the children without dependence upon the DHHR. The witness explained that the parents

6

"participated with services each time they had services out and they didn't have any issues, but as soon as the services were gone it went back to the same situation." In addition, records kept of the mother's Adult Life Skills classes reflect that she did not accept responsibility for the neglect of her children. Rather, she insisted that "she had been done wrong by the DHHR and . . . had been harassed [by the DHHR] for 26 years."

Although his counsel participated in cross-examination, Father H.A. did not offer any witnesses or evidence during the dispositional hearing. Mother V.A. testified and claimed that she kept her home and her children clean. She testified that she had trouble making the two older children attend school, but to remedy this, she had filed a truancy petition against J.A.-1. The paternal grandmother testified that while four of the children have been in her care, the children have been doing well. She sends them to school clean, she treated their lice, and A.A. has not had problems missing school. The paternal grandmother also testified that supervised visitation with the parents was going well, but the children miss and "cry for" their parents.

During the dispositional hearing, after taking into consideration all of the evidence presented throughout the entire case, the circuit court found that the parents were unwilling or unable to correct the conditions of abuse and/or neglect and there was no reasonable likelihood that they could correct these conditions in the near future. The circuit court determined that termination of parental rights was in the children's best interests and was the least restrictive alternative. Seeking clarification of the court's ruling, the GAL

inquired whether the court meant to terminate "the rights" to the two older children, J.A.-1 and A.A. These two children were over the age of fourteen, and the GAL represented that they did not want their parents' rights to be terminated.[5] Without providing any analysis, the judge responded, "I guess not. I feel so bad for these children. Do you think they'll be able to graduate?" The GAL responded that efforts would be made to keep J.A.-1 in a GED program. The judge responded, "[s]ee what you can do about this matter. That will conclude this matter." Thereafter, the circuit court entered its written dispositional order on November 1, 2018. This order terminated the parents' parental rights to the three youngest children Z.A., S.A., and J.A.-2, but made no mention of J.A.-1 and A.A.[6]

In their appeals to this Court, the parents challenge the termination of their parental rights to Z.A., S.A., and J.A.-2. After reviewing the parties' briefs and the record on appeal, this Court *sua sponte* required supplemental briefing on the question of whether the circuit court erred by not terminating the parents' custodial and guardianship rights to A.A., who is now sixteen years old.[7] Having received the parties' original and supplemental

---

[5] At the time of the August 2018 dispositional hearing, J.A.-1 was seventeen and A.A. was fifteen.

[6] On its own motion in accordance with Rule 6(b) of the Rules of Appellate Procedure, on August 29, 2019, this Court supplemented the appellate appendix records with the orders entered by the circuit court subsequent to its November 1, 2018 order. None of these orders provide a disposition for J.A.-1 and A.A.

[7] J.A.-1 reached the age of majority before the appellate briefs were filed.

briefs, the parties' Rule 11(j) updates,[8] two appendix records and a supplement thereto, and

oral argument, this appeal is ready for decision.

## II. Standard of Review

This Court has established the following standard of appellate review for

abuse and neglect cases:

> Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety. Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). The overarching

consideration in all abuse and neglect cases must be the children's best interests. This Court

held in syllabus point three of *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996), that

"[a]lthough parents have substantial rights that must be protected, the primary goal in cases

---

[8] In status reports filed pursuant to Rule 11(j) of the Rules of Appellate Procedure, the GAL and the DHHR reported that A.A., Z.A., S.A., and J.A.-2 are living with their paternal grandmother and doing well. The permanency plan for Z.A., S.A., and J.A.-2 is adoption by this grandmother.

9

involving abuse and neglect, as in all family law matters, must be the health and welfare of the children." To that end, we have held that

> [i]n cases involving the abuse and neglect of children, when it appears from this Court's review of the record on appeal that the health and welfare of a child may be at risk as a result of the child's custodial placement, regardless of whether that placement is an issue raised in the appeal, this Court will take such action as it deems appropriate and necessary to protect that child.

Syl. Pt. 6, *In re Timber M.*, 231 W.Va. 44, 743 S.E.2d 352 (2013). With these principles in mind, we turn to the issues presented by this case.

## III. Discussion

### A. Termination of parental rights to Z.A., S.A., and J.A.-2

Although they filed separate briefs, each of the parents asserts a single assignment of error on appeal: that the circuit court should not have terminated their parental rights to Z.A., S.A., and J.A.-2. They make nearly identical arguments in support of this contention. They contend that the DHHR failed to make any allegations of abuse and neglect that would warrant termination, that the family home has been cleaned, that issues of educational neglect could have been rectified by pursuing a truancy petition against J.A.-1, that the children are experiencing the same truancy and lice problems while living with the paternal grandmother, and that the family's income was limited to the father's disability payments and a determination of neglect should not be based solely upon a lack of financial means. Finally, both parents argue that they have demonstrated they could improve, therefore termination was improper without first allowing them a post-

10

adjudicatory improvement period. The DHHR and GAL respond that termination is supported by the evidence and is necessary for the children's welfare. Having reviewed the record and the applicable law, we find no error in the circuit court's decision to terminate parental rights to Z.A., S.A., and J.A.-2.

The West Virginia Code defines "neglected child" to include a child whose parent fails to provide necessary clothing, shelter, supervision, or education:

> "Neglected child" means a child:
> (A) Whose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, supervision, medical care, or education, when that refusal, failure, or inability is not due primarily to a lack of financial means on the part of the parent, guardian, or custodian;
> (B) Who is presently without necessary food, clothing, shelter, medical care, education, or supervision because of the disappearance or absence of the child's parent or custodian; or
> (C) "Neglected child" does not mean a child whose education is conducted within the provisions of § 18-8-1 *et seq.* of this code.

W.Va. Code § 49-1-201 (2018). An "abusing parent" is "a parent, guardian, or other custodian, regardless of his or her age, whose conduct has been adjudicated by the court to constitute child abuse or neglect as alleged in the petition charging child abuse or neglect." *Id.* The DHHR alleged and proved facts that clearly constitute child neglect based upon the failure to provide adequate clothing, shelter, education, and supervision.

11

The record evidence reveals a prolonged history of the children being sent to school in a filthy condition, smelling so bad that people complained. When this abuse and neglect petition was filed in February 2018, the family home was strewn with garbage and pet excrement. Although there was testimony that the parents had made efforts to clean their home after this petition was filed, the home still needed more cleaning and several of the children were suffering from untreated lice. The evidence revealed prior instances over the last twenty years where the parents had failed to care for their children and home, and each time the DHHR's interventions ended, the parents reverted to their neglectful ways. Moreover, the parents' recent efforts to clean their home did nothing to remedy the extreme educational neglect in this family.

Critically, the parents allowed each of the five minor children to miss an enormous amount of school. For one school year, J.A.-1 did not attend school at all; A.A. had seventy unexcused absences; Z.A. had twenty unexcused absences; S.A. had thirteen unexcused absences; and J.A.-2 had eleven unexcused absences. J.A.-1 was seventeen years old but had only completed a few freshman credits in high school. When officials investigated these truancy issues, the parents' primary response was to withdraw J.A.-1 and, subsequently, A.A. from public school. However, the claimed home schooling was nothing but a masquerade to conceal that these two children were receiving no education. The parents were not qualified, and the maternal grandmother was either not able or willing, to provide home instruction. Most importantly, there is no evidence that any home school lessons were ever completed by the two teenagers. Despite the failure of home

12

schooling for the oldest two children, the parents contemplated withdrawing the youngest three children from school. Although the parents assert that pursuing a truancy petition against J.A.-1 could have solved the absenteeism problem, J.A.-1 was just one of the five minor children, and a truancy petition against J.A.-1 would not have rectified the parents' neglectful supervision of their other children's education.

The parents contend that the children are having the same truancy, lice, and behavioral problems while living with the paternal grandmother since removal from the parents' home. However, this is belied by the paternal grandmother's testimony during the dispositional hearing, and by the GAL's and DHHR's recently-filed Rule 11(j) reports. The paternal grandmother testified that she successfully treated the children's lice, sends the children to school clean, and that the children are attending school. The GAL and DHHR reported that A.A. was temporarily sent to a children's treatment facility after the dispositional hearing, but has now been returned to the paternal grandmother's home and is doing better. Obviously, the children had to undergo a period of transition where they were made to go to school, unlike the lax and neglectful supervision to which they had grown accustomed in the parents' home. Moreover, contrary to the parents' argument, the circuit court did not terminate their parental rights based upon their economic circumstances. Rather, the record demonstrates that despite the provision of numerous assistive services from the DHHR, the parents failed to remedy the condition of their home, their children's truancy, and their children's poor hygiene for a period of nearly twenty years.

13

We likewise reject the parents' argument that it was error for the circuit court to terminate their parental rights without first granting them a post-adjudicatory improvement period. Pursuant to West Virginia Code § 49-4-610(2)(B) (2015), for a court to grant an improvement period, a parent must "demonstrate[], by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period[.]" Parents must accept responsibility for their abusive and neglectful conduct:

> [I]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*Timber M.*, 231 W. Va. at 55, 743 S.E.2d at 363 (quoting *In re: Charity H.*, 215 W.Va. 208, 217, 599 S.E.2d 631, 640 (2004)). The decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See Katie S.*, 198 W.Va. at 82, 479 S.E.2d at 592, syl. pt. 6, in part ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements[.]"); *In re M.M.*, 236 W.Va. 108, 115, 778 S.E.2d 338, 345 (2015) (Recognizing that "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period.").

The evidence in this case reveals that the parents received services from the DHHR for many years, but they always reverted to their neglectful ways. Although they were not granted a formal improvement period in this particular case, the parents received "Safe at Home" services immediately prior to the filing of the February 2018 petition and

14

they received Parent and Adult Education classes during the course of this proceeding. Nonetheless, they have refused to accept responsibility for the neglect they perpetrated. Despite overwhelming evidence to the contrary, the mother testified that she made sure her children were clean when going to school. She also told her Adult Life Skills teacher that the DHHR was harassing her. Both parents have argued that the home is now clean, and that the truancy problems could have been rectified merely with a truancy petition against J.A.-1. This failure to accept responsibility, coupled with the nearly twenty years of services that they have already received, obviously militates against granting an improvement period. "'[C]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened . . . .' Syl. Pt. 1, in part, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980)." *In re Cecil T.*, 228 W.Va. at 91, 717 S.E.2d at 875, syl. pt. 4, in part. As such, we conclude that the circuit court did not abuse its discretion by refusing to grant the parents a post-adjudicatory improvement period.

After considering the record and the parties' arguments, we affirm the circuit court's decision to terminate parental rights to the three youngest children. West Virginia Code § 49-4-604(b)(6) (2019) instructs a circuit court to terminate parental rights if the court finds "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and termination is necessary for the children's welfare. Pursuant to West Virginia Code § 49-4-604(c), "'[n]o reasonable likelihood that conditions of neglect or abuse can be substantially corrected' means that, based upon the

15

evidence before the court, the abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." In this case, the evidence of physical and educational neglect is clear and convincing, but the parents have been unable to correct their conduct for approximately two decades. As such, termination of parental rights is necessary for the welfare of Z.A., S.A., and J.A.-2.

## B. Teenager A.A.

While no party assigned or cross-assigned any error on appeal with regard to A.A., our review of the record has revealed two glaring deficiencies in the procedures followed in the disposition of the parents' rights to both A.A., who is currently sixteen years old, and to her older brother J.A.-1, who turned eighteen during the appeal period. After detailing the parents' neglect of all five children, finding that the parents were unwilling and unable to adequately care for their children, and concluding that parental rights must be terminated, the circuit court went on to exclude J.A.-1 and A.A. from that disposition. This decision appears to have been made solely because J.A.-1 and A.A. were over the age of fourteen and expressed the desire that their parents' parental rights not be terminated. Even though J.A.-1 and A.A. were also the victims of neglect, there is no indication in the record that the circuit court took into account what disposition would be best for their health and welfare. Furthermore, there is nothing in the record to indicate that any dispositional order was ever entered with regard to J.A.-1 and A.A.[9] Both were still

---

[9] *See supra*, n. 6.

16

minors subject to the circuit court's abuse and neglect jurisdiction at the time of the August 15, 2018 dispositional hearing and the entry of the November 1, 2018 dispositional order, yet they are not mentioned in the order. They appear to have been left hanging in legal limbo.

Generally, this Court declines to consider non-jurisdictional issues that are not raised by the parties to an appeal. However, when our review of an abuse and neglect case discloses that a child may be at risk, we are duty bound to act. *See Timber M.*, 231 W.Va. at 47, 743 S.E.2d at 355, syl. pt. 6. As we explained in *Timber M.*:

> Based on our prior precedent and firmly rooted in this Court's concern for the well-being of children, we now hold that in cases involving the abuse and neglect of children, when it appears from this Court's review of the record on appeal that the health and welfare of a child may be at risk as a result of the child's custodial placement, regardless of whether that placement is an issue raised in the appeal, this Court will take such action as it deems appropriate and necessary to protect that child. Such action may include vacating the circuit court's order of disposition with respect to the custodial placement, remanding the case for further proceedings, and directing the entry of an order fully explaining the propriety of the custodial placement. The thoroughness of such an order becomes extremely important if a circuit court were to determine on remand that its initial custodial placement was, in fact, appropriate.

*Id.* at 60, 743 S.E.2d at 368. Moreover, the Court's history of seeking to protect children, even when a concern is not raised as an assignment of error, did not begin with *Timber M. See, e.g., In re Jonathan Michael D.*, 194 W.Va. 20, 27, 459 S.E.2d 131, 138 (1995) (*sua sponte* addressing issue of particular concern in abuse and neglect case); *In re Jamie Nicole*

17

*H.*, 205 W.Va. 176, 183, 517 S.E.2d 41, 48 (1999) (*sua sponte* addressing sufficiency of abuse and neglect dispositional order). More recently, this Court *sua sponte* remanded a case for the circuit court to re-evaluate the appropriateness of allowing a father to retain custody of one child, when it was necessary to terminate the father's rights to a sibling due to abuse and neglect. *In re A.N.*, 241 W.Va. 275, __, 823 S.E.2d 713, 723-27 (2019). Similarly, earlier this year we remanded an abuse and neglect case with directions that an abuse and neglect petition be filed regarding the newly-born child of an abusive parent. *In re N.H.*, 241 W.Va. 648, __, 827 S.E.2d 436, 445-46 (2019).[10]

After reviewing the record on appeal and the parties' initial briefs, this Court ordered supplemental briefing from all of the parties regarding A.A. Because of our concern that A.A. may still be at risk, we *sua sponte* examine the procedural deficiencies evident in this matter.

---

[10] In a supplemental brief filed at the direction of this Court, the DHHR argued that "there would be jurisdictional concerns if this Court disturbed" the circuit court's "order with respect to A.A." To support this statement, the DHHR string-cited cases with no explanatory notes. Upon our review, this Court is unable to ascertain the relevance of the cited cases. Moreover, the DHHR wholly ignored *Timber M.* and the other authority cited herein. Most importantly, the DHHR's position fails to account for the fact that there was no dispositional order addressing any of the parents' rights to A.A. This child was temporarily removed from her parents' home as part of the abuse and neglect case, but has been left hanging in legal limbo with no resolution as to who her permanent custodian or guardian will be.

18

In their supplemental briefs, the parties acknowledge that the circuit court did not terminate the parents' parental rights to A.A. because A.A. did not want these rights terminated.[11] The parties point to West Virginia Code § 49-4-604(b)(6)(C), which requires that the wishes of older children be considered. Specifically, this statute requires that "in fixing its dispositional order . . . the court shall give consideration to the wishes of a child 14 years of age or older or otherwise of an age of discretion as determined by the court regarding the permanent termination of parental rights." *Id.*[12]

---

[11] Essentially, the GAL explained in her supplemental brief that "absent special circumstances," the local "practice and procedure" is to leave parental rights intact if a child who is fourteen years old or older desires it. The GAL did not specify what she meant by "special circumstances," but indicated that they were not present in this case.

[12] West Virginia Code § 49-4-604(b)(6)(C) provides:

(6) Upon a finding that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future and, when necessary for the welfare of the child, terminate the parental, custodial and guardianship rights and responsibilities of the abusing parent and commit the child to the permanent sole custody of the nonabusing parent, if there be one, or, if not, to either the permanent guardianship of the department or a licensed child welfare agency. The court may award sole custody of the child to a nonabusing battered parent. If the court shall so find, then in fixing its dispositional order the court shall consider the following factors:
. . . .
> (C) Other factors as the court considers necessary and proper. Notwithstanding any other provision of this article, the court shall give consideration to the wishes of a child 14 years of age or older or otherwise of an age of discretion as determined by the court regarding the permanent termination of parental rights. No adoption of a child shall take place until all proceedings for termination of parental rights under this article and appeals thereof are final. In determining whether or not parental rights should be terminated, the court shall consider

We have had several opportunities to address this statute in the context of a circuit court's failure to give consideration to the wishes of children who are at least fourteen years old or otherwise of an age of discretion. For example, in *T.W.*, two children who were fourteen or older wished to inform the circuit court about specific conduct of their father relevant to the issue of termination of parental rights, but the court refused to hold an *in camera* hearing with the children and only considered the representations of counsel. *In re T.W.*, 230 W.Va. 172, 182, 737 S.E.2d 69, 79 (2012). This Court concluded that the children should have been provided a meaningful opportunity to express their concerns, and the circuit court was directed to, on remand, determine an appropriate manner in which the children could be heard. *Id.* Similarly, in *Jessica G.*, the circuit court was informed that a thirteen-year-old girl had a strong bond with her father and did not wish to have the parental rights terminated. *In re Jessica G.*, 226 W.Va. 17, 697 S.E.2d 53 (2010). The circuit court failed to adequately explain why the girl was not "otherwise of an age of discretion" and failed to explain why her wishes were not factored into the termination decision, as required by the statute. *Id.* at 21-22, 697 S.E.2d at 57-58. In *Ashton M.*, a circuit court took into account a sixteen-year-old girl's wishes regarding the termination of her mother's *custodial rights*, but erroneously failed to consider the child's wishes regarding the termination of her mother's *parental* rights. *In re Ashton M.*, 228

the efforts made by the department to provide remedial and reunification services to the parent.

W.Va. 584, 591-92, 723 S.E.2d 409, 416-17 (2012). This Court remanded the case and required the circuit court to consider the daughter's wishes regarding parental rights. *Id.*[13]

It is critical to recognize, however, that West Virginia Code § 49-4-604(b)(6)(C) does not *obligate* a circuit court to follow a child's wishes regarding termination of a parents' rights, even if the child is fourteen or older or otherwise of an age of discretion. The statute merely requires a circuit court to "give consideration" to those wishes. Justice Workman clearly explained this in her concurrence to *Jessica G.*:

> I write separately to emphasize that nothing in the majority opinion, nor in West Virginia Code § 49-6-5(a)(6) (2009) [now § 49-4-604(b)(6)(C)], should be misconstrued to imply that the wishes of a child who is fourteen years or older, or who is of an age of discretion as determined by the court, must control a court's decision on whether to terminate parental rights. . . . While the statute clearly requires a court to consider such child's wishes, it is not dispositive. This Court has continuously held that a major factor in cases involving children is the children's best interest. *See* Syl. Pt. 7, in part, *In Re Charity H.*, 215 W.Va. 208, 599 S.E.2d 631 (2004) ("'[T]he primary goal in cases involving abuse and neglect, as in all family law matters, must be the health and welfare of the children.' Syl. Pt. 3, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996)."). It should also be noted that "the Court is authorized to exercise a discretion conducive to the best interest of the child." *Hammond v. Dep't of Pub. Assistance of Doddridge County*, 142 W.Va. 208, 216, 95 S.E.2d 345, 349 (1956).

---

[13] *T.W., Jessica G.*, and *Ashton M.* were decided when this statutory provision was codified at West Virginia Code § 49-6-5(a)(6)(C) [now W.Va. Code § 49-4-604(b)(6)(C)].

*Jessica G.*, 226 W. Va. at 23, 697 S.E.2d at 59 (Workman, J., concurring). Indeed, it is clear that "the child's only right emanating from [W.Va. Code § 49-4-604(b)(6)(C)] is to express his or her wishes regarding the termination of the parental rights." *Ashton M.*, 228 W.Va. at 594, 723 S.E.2d at 419 (Workman, J., concurring in part, dissenting in part).

Thus, rather than blindly accepting a teenager's wishes carte blanche, those wishes should instead be factored into an analysis of what outcome would be in the minor's best interests. "[T]he primary goal in cases involving abuse and neglect, as in all family law matters, must be the health and welfare of the children." *Katie S.*, 198 W.Va. at 82, 479 S.E.2d at 592, syl. pt. 3, in part. Similarly, we have said that "[i]n a contest involving the custody of an infant the welfare of the child is the polar star by which the discretion of the court will be guided." Syl. Pt. 4, *In re J.S.*, 233 W.Va. 394, 758 S.E.2d 747 (2014) (internal citation omitted). "In visitation as well as custody matters, we have traditionally held paramount the best interests of the child." Syl. Pt. 6, *In re Frances J.A.S.*, 213 W.Va. 636, 584 S.E.2d 492 (2003) (internal citation omitted). Moreover, the use of the best interests standard is mandated by Rule 38 of the Rules of Procedure for Child Abuse and Neglect Proceedings, which is the rule addressing a circuit court's disposition decision: "The court also shall determine the necessary disposition consistent with the best interests of the child."[14]

---

[14] Rule 38 of the Rules of Procedure for Child Abuse and Neglect Proceedings provides:

22

In their supplemental briefs, the parties correctly identify the statutory obligation of a circuit court to consider the wishes of a child who is fourteen years of age or older. However, none of the parties recognize that the ultimate decision regarding the disposition of an abusing parent's rights always rests with the court. Simply because a teenager wishes to remain with his or her abusing parents, does not automatically mean that it would be in the teen's best interests to do so. For example, in this case, it is conceivable that J.A.-1 and A.A. asked for their parents' parental rights to be left intact because they knew their parents would not make them go to school.

To clarify this issue, we now hold that when determining whether to permanently terminate the parental, custodial and guardianship rights and responsibilities of an abusing parent, West Virginia Code § 49-4-604(b)(6)(C) (2019) requires a circuit court to give consideration to the wishes of a child who is fourteen years of age or older or

---

**Rule 38. Hearing after improvement period; final disposition.**

No later than thirty (30) days after the end of the alternative disposition improvement period, the court shall hold a hearing to determine the final disposition of the case, including whether the conditions of abuse and/or neglect have been adequately improved in accordance with W.Va. Code § 49-4-604(d). Any party and persons entitled to notice and the right to be heard shall receive notice of the hearing. The court also shall determine the necessary disposition consistent with the best interests of the child. Within ten (10) days of the conclusion of the hearing, the court shall enter a final disposition order in accordance with the provisions of Rule 37.

otherwise of an age of discretion as determined by the court. A circuit court is not obligated to comply with the child's wishes, but shall make the termination decision based upon a consideration of the child's best interests. The child's preference is just one factor for the circuit court's consideration. Upon considering the child's wishes and best interests, the circuit court may determine that some disposition less than full termination of parental rights is appropriate—such as termination of only the parent's custodial and guardianship rights. Or, the circuit court may determine that post-termination visitation with the parents would best serve the child. Regardless of what decision the circuit court reaches at disposition, it must be dictated by what is best for the child's health and welfare.

In this case, there is no indication that the circuit court considered what disposition would be in the best interests of A.A. There is also no indication that the court heard *why* A.A. did not wish for parental rights to be terminated, and no indication that the circuit court considered alternative outcomes such as termination of the parents' custodial and guardianship rights.

This matter is further complicated by the lack of a dispositional order addressing A.A. Rule 36(a) of the Rules of Procedure for Child Abuse and Neglect Proceedings specifies that a dispositional order must contain findings of fact and conclusions of law, and both Rule 36(a) and Rule 38 direct that the order must be entered

within ten days of the conclusion of the dispositional hearing.[15] Unfortunately, those procedures were not followed with regard to this child.

A.A. was removed from her parents' home in the course of this abuse and neglect case. However, because the November 2018 dispositional order is silent with regard to her, it is unclear whether the circuit court intended for A.A. to be returned to the abusing parents' home, to continue in a placement with her paternal grandmother, or some other outcome. The parties' supplemental briefs do little to clear up the confusion over A.A.'s custodial status. The DHHR asserts that "[t]he custodial and guardianship rights to A.A. were not terminated by the Circuit Court"—yet paradoxically, the DHHR reports that *after* the dispositional hearing, A.A. was placed in a residential treatment center and was then returned to the paternal grandmother's home. If none of the parents' rights to A.A. were terminated at the disposition of the abuse and neglect case, it is unclear why or how A.A. would continue to be placed in the paternal grandmother's home.

---

[15] Rule 38 is quoted in footnote 14, *supra*. Rule 36(a) provides:

**Rule 36. Findings; disposition order.**

(a) *Findings of fact and conclusions of law; time frame.* At the conclusion of the disposition hearing, the court shall make findings of fact and conclusions of law, in writing or on the record, as to the appropriate disposition in accordance with the provisions of W.Va. Code § 49-4-604. The court shall enter a disposition order, including findings of fact and conclusions of law, within ten (10) days of the conclusion of the hearing.

The GAL's supplemental brief further demonstrates the uncertainty that this child has been relegated to. The GAL says,

> [t]he Dispositional Order was silent with regard to custodial and/or guardianship rights of the parents, however, the [GAL's] recommendation was that the paternal grandmother [would] pursue a legal guardianship, at least with regard to A.A. . . . . It would have been more clear if the Order had also stated that the custodial/guardianship rights of the biological parents were terminated with regard to A.A. and J.A.[-1].

Specifying a disposition for A.A. was necessary for more than just the sake of clarity. If the circuit court intended to sever the parents' custodial and guardianship rights to A.A. so that the paternal grandmother could pursue a legal guardianship, then the court should have expressly said so in an order. The failure to enter any dispositional order addressing A.A. has caused an unnecessary delay in achieving permanency for this child.

When the procedures in an abuse and neglect case are substantially disregarded, as has occurred in this case, we will vacate the resultant problematic rulings and remand for corrective action:

> "Where it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children adjudicated to be abused or neglected has been substantially disregarded or frustrated, the resulting order of disposition will be vacated and the case remanded for compliance with that process and entry of an appropriate dispositional order." Syl. Pt. 5, *In re Edward B.*, 210 W.Va. 621, 558 S.E.2d 620 (2001).

26

*T.W.*, 230 W.Va. at 175, 737 S.E.2d at 72, syl. pt. 5; *accord Timber M.*, 231 W.Va. at 60, 743 S.E.2d at 368 (Recognizing that this Court may *sua sponte* take action to "include vacating the circuit court's order of disposition with respect to the custodial placement, remanding the case for further proceedings, and directing the entry of an order fully explaining the propriety of the custodial placement"). Because the circuit court did not perform a best interests analysis with regard to the disposition of the parents' rights to A.A., and because there has been no dispositional order entered that addresses A.A., we vacate the circuit court's verbal ruling regarding the parents' rights to A.A. and remand this case for further proceedings consistent with this opinion.[16]

---

[16] We feel compelled to also comment upon J.A.-1. It is unclear from the record on appeal, but it appears he was in a children's facility when he turned eighteen. If the DHHR has not already done so, we urge it to contact J.A.-1 to determine whether he would be amenable to receiving the services available for foster children who "age out" of the system.

## IV. Conclusion

For the foregoing reasons, we affirm the portions of the circuit court's November 1, 2018, order terminating the parental rights to Z.A., S.A., and J.A.-2. We vacate the circuit court's ruling that left intact the parents' rights to A.A., and we remand this matter to the circuit court for further proceedings consistent with this opinion. The Clerk is directed to issue the mandate in this case forthwith.[17]

Affirmed in Part, Vacated in Part,
and Remanded with Directions.

---

[17] The circuit court's dispositional ruling with regard to Z.A., S.A., and J.A.-2 is final. The implementation of permanency plans for these three children must not wait for the circuit court's disposition of the parents' rights to A.A. Rule 39(b) of the Rules of Procedure for Child and Abuse Neglect Proceedings requires the circuit court to conduct a permanent placement review conference at least every three months until a permanent placement is achieved, and pursuant to Rule 43 of these same rules, permanent placement for the children must occur within twelve months of the final dispositional order.